IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BMO BANK N.A.,

                **Plaintiff**,

v.                                                                                  Case No. 24-2164-DDC-BGS

BLITZ TRANSIT, LLC,

                **Defendant**.

**MEMORANDUM AND ORDER**

      Plaintiff BMO Bank N.A. moves for default judgment against defendant Blitz Transit, LLC. Doc. 25. BMO and Blitz entered into nine Loan and Security agreements between August 2020 and November 2022. The agreements provided that BMO would finance Blitz's purchase of equipment, with that equipment functioning as the agreements' collateral. BMO asserts that Blitz, starting in September 2023, failed to make payments due under all nine agreements. So, BMO elected to accelerate the balance due and provided written notice of acceleration to Blitz in December 2023. BMO also demanded possession of the collateral—the equipment financed by the nine loan agreements. Blitz voluntarily surrendered the collateral when this suit commenced. BMO applied the net proceeds of the collateral's sale to the outstanding balance owed by Blitz. Now, BMO seeks a default judgment securing: (a) the amount Blitz still owes BMO; (b) attorney fees and expenses; (c) final possession of the collateral; and (d) authorization to continue liquidating the remaining recovered collateral. *Id.* at 2–3.

The court grants BMO's motion. It reaches this decision after (i) ensuring its jurisdiction; (ii) determining that BMO's uncontested facts constitute legitimate causes of action; and (iii) concluding BMO's declaration and documentary evidence reflect a basis for the damages and attorney fees award. The court explains its conclusions, below. But first, it recites the background facts, taken from the Complaint.

## I.     Background

From August 2020 to November 2022, BMO and Blitz entered into nine Loan and Security agreements. Doc. 1 at 2–6 (Compl. ¶¶ 9–27) (outlining nine agreements). BMO agreed to finance Blitz's purchase of equipment and Blitz agreed to repay the financed amount plus interest.[1] *Id.* The Complaint includes the nine agreements as attachments. *See* Doc. 1-2 (Pl. Ex. A); Doc. 1-3 (Pl. Ex. B); Doc. 1-4 (Pl. Ex. C); Doc. 1-5 (Pl. Ex. D); Doc. 1-6 (Pl. Ex. E); Doc. 1-7 (Pl. Ex. F); Doc. 1-8 (Pl. Ex. G); Doc. 1-9 (Pl. Ex. H); Doc. 1-10 (Pl. Ex. I). BMO alleges that it performed all its obligations under the nine agreements by financing Blitz's equipment purchases. *Id.* at 3–6 (Compl. ¶¶ 10, 12, 14, 16, 18, 20, 22, 24, 26). But, according to the Complaint, Blitz breached the agreements—failing to make required payments due under each agreement—starting in September 2023. *See id.* at 7–8 (Compl. ¶ 34) (alleging specific dates when Blitz first failed to make payments due under each agreement). And, BMO alleges, Blitz has failed to make subsequent payments due under the agreements, as well. *Id.*

As a result of Blitz's default, BMO elected to accelerate the balance due under the agreements and declare the entire indebtedness owed. *Id.* at 8 (Compl. ¶ 37). Taking into

---

[1] The Complaint and the declaration BMO submitted in support of its default judgment motion describe the ninth agreement differently. The Complaint describes the ninth agreement just like the eight before it—an agreement "wherein Plaintiff financed Borrower's purchase of the equipment described therein[.]" Doc. 1 at 6 (Compl. ¶ 25). The attached declaration, on the other hand, describes the ninth contract as an agreement "wherein Lender financed the *repair* of the Second Loan Collateral[.]" Doc. 25 at 9 (Broadie Decl. ¶ 20) (emphasis added). This discrepancy doesn't affect the court's analysis.

account accrued interest and fees provided for by the agreements, the amount due and owing after acceleration was $314,459.38 as of December 21, 2023. *Id.* at 9 (Compl. ¶ 44). BMO notified Blitz in writing on December 22, 2023, that it had elected to accelerate the balance due. *Id.* at 8 (Compl. ¶ 39); *see also* Doc. 1-13 at 2 (Pl. Ex. L). And it demanded that Blitz surrender possession of the collateral to BMO. Doc. 1 at 9 (Compl. ¶ 46).

BMO filed this action on April 24, 2024. Doc. 1. As of the Complaint's filing, Blitz had neither paid the amounts due nor returned possession of the collateral. *Id.* at 9 (Compl. ¶¶ 47–48).[2] After securing leave of court for more time to effect service, BMO served Blitz on February 7, 2025. *See* Doc. 16 (extending time for service); Doc. 18 at 3 (Kansas Secretary of State office's notification that summons returned executed on February 7, 2025). Based on this date of service, Blitz had until February 28, 2025, to answer or otherwise respond. Doc. 18; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing 21 days to answer after summons and complaint served). To date, Blitz hasn't entered an appearance, answered, or filed any other form of responsive pleading. After applying for and receiving a Clerk's Entry of Default, Doc. 20; Doc. 22, BMO moved for default judgment on May 21, 2025, Doc. 25. In its motion, BMO seeks a judgment against Blitz securing:

(a) the amount still owed—$213,550.62—plus post-judgment interest, less any net proceeds received from liquidating the remaining collateral;

(b) an award of $32,851.60 in attorney fees and expenses;

(c) final possession of the collateral; and

(d) authorization to continue liquidating, in a commercially reasonable manner, the remaining recovered collateral.

---

[2] BMO filed a declaration with its default judgment motion attesting that Blitz "voluntarily surrendered possession of the Collateral" after BMO had filed its Complaint. Doc. 25 at 11–12 (Broadie Decl. ¶ 38). BMO then sold some of that collateral at public auction and applied the net proceeds from those sales to reduce the outstanding balance due. *Id.* at 12 (Broadie Decl. ¶¶ 39, 41).

Doc. 25 at 3.

II.        **Legal Standard**

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment. BMO has satisfied the first step already. The Clerk has entered default against Blitz under Rule 55(a) because it "failed to plead or otherwise defend in this case[.]" Doc. 22. So, this Order addresses the second step, outlined in Rule 55(b)(2). At step two, whether to enter "default judgment is committed to the sound discretion of the district court[.]" *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). In exercising this discretion, the court remains mindful that "[d]efault judgments are a harsh sanction[.]" *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991). They are justified "only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (quotation cleaned up). Otherwise, "the diligent party" may suffer "interminable delay and continued uncertainty [about] his rights." *Id.* at 733 (quotation cleaned up).

Before entering a default judgment against Blitz, the "court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) ("A default judgment in a civil case is void if there is no personal jurisdiction over the defendant." (quotation cleaned up)).

When deciding whether to enter a default judgment, the court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003). "Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016) (citations and internal quotation marks omitted). "In addition, the court accepts the undisputed facts set forth

4

in any affidavits and exhibits attached to the complaint or submitted in support of the motion for default judgment." *CapFinancial Props. CV1, LLC v. Highway 210, LLC*, No. 09-2465-DJW, 2011 WL 1303323, at *2 (D. Kan. Apr. 1, 2011). Nonetheless, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A *Wright & Miller's Federal Practice and Procedure* § 2688 (3d ed. 1998)). That is, there "must be a sufficient basis in the pleadings for the judgment entered." *Id.* (quotation cleaned up). Finally, the court may award damages "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *DeMarsh v. Tornado Innovations*, *L.P.*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009) (quotation cleaned up).

The court begins with jurisdiction, ensuring it has subject matter jurisdiction over the dispute and personal jurisdiction over Blitz. It then evaluates whether there's "a sufficient basis in the pleadings for the judgment entered." *Bixler*, 596 F.3d at 762. In so doing, the court finds that BMO's Complaint satisfies the prima facie elements of its breach-of-contract and replevin claims. Having determined that BMO is entitled to recover on these two claims, the court then addresses BMO's damages and attorney fee request, finding that "the record adequately reflects the basis for" the award requested. *DeMarsh*, 2009 WL 3720180, at *2 (quotation cleaned up).

**III.     Jurisdiction**

  **A.     Subject Matter Jurisdiction**

28 U.S.C. § 1332 authorizes federal courts to hear a case when the parties are completely diverse and the amount in controversy exceeds $75,000. "Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). To determine

whether diversity jurisdiction exists, the court considers each litigant's state of citizenship. 28 U.S.C. § 1332(a). "Where, as here, the issue is determined on the basis of the pleadings and affidavits, that burden may be met by a prima facie showing." *IMM, LLC v. Plankk Techs. Inc.*, No. 19-cv-02629-CMA, 2020 WL 902320, at *2 (D. Colo. Feb. 25, 2020) (quotation cleaned up); *see also Maxitransfers LLC v. Envios Mi Fiesta Facil 2 LLC*, No. 24-cv-00772-TC, 2025 WL 1000843, at *4 (D. Utah Apr. 3, 2025) (evaluating at default judgment whether complaint "support[s] a reasonable inference that [plaintiff] is of diverse citizenship from the Defendants" by assessing whether complaint "plausibly alleges" each parties' citizenship).

Here, the Complaint's allegations—taken as true for purposes of a default judgment motion—establish the court's subject matter jurisdiction. The Complaint alleges that BMO is a citizen of the state of Illinois. Doc. 1 at 1 (Compl. ¶ 1). Specifically, BMO is "a national banking association with its main office located in Chicago, Cook County, Illinois, as set forth in its articles of association." *Id.*; *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("[W]e hold that a national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located."). And the Complaint alleges that Blitz, a limited liability company, has a sole member who is a citizen of the state of Kansas. Doc. 1 at 1 (Compl. ¶ 2); *see Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) ("Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the citizenship of all its members."). Finally, according to the Complaint, the amount in controversy is upwards of $300,000. Doc. 1 at 9 (Compl. ¶ 44). The Complaint's allegations thus establish the court's jurisdiction over this matter.

B.     **Personal Jurisdiction**

To establish personal jurisdiction over Blitz, BMO must satisfy the forum state's long-arm statute and constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir.

2006). Alternatively, "jurisdiction over a party may be conferred upon a court by contractual agreement of the parties[.]" *Williams*, 802 F.2d at 1202. "To the extent that parties have consented to personal jurisdiction in a certain forum, application of a forum state's long-arm statute and analysis of a party's contacts with the forum state are unnecessary." *Elec. Realty Assocs., L.P. v. Vaughan Real Est., Inc.*, 897 F. Supp. 521, 523 (D. Kan. 1995).

Here the parties' contracts specify that BMO may "commence any proceeding in the federal or state courts located in the state in which the Equipment is located" and both parties contractually "waive any objection . . . to the bringing of such action or proceeding in such jurisdictions." Doc. 1-2 at 5 (Pl. Ex. A); *see also* Doc. 1-3 at 5 (Pl. Ex. B); Doc. 1-4 at 5 (Pl. Ex. C); Doc. 1-5 at 5 (Pl. Ex. D); Doc. 1-6 at 5 (Pl. Ex. E); Doc. 1-7 at 5 (Pl. Ex. F); Doc. 1-8 at 5 (Pl. Ex. G); Doc. 1-9 at 5 (Pl. Ex. H); Doc. 1-10 at 5–6 (Pl. Ex. I). The equipment referenced in these contracts—various vehicles that function as collateral—are registered and titled in Kansas. *See* Doc. 1-11 at 2–13 (Pl. Ex. J). And so, the parties, by contractual agreement, consented to our court. They thus conferred jurisdiction on the court.

Satisfied that the court has diversity jurisdiction over this matter and personal jurisdiction over Blitz, the court addresses BMO's right to recover, next.

IV. **BMO's Claims**

The Complaint brings claims for breach of contract and replevin.[3] Under the breach-of-contract claim, BMO's motion seeks a judgment of $213,550.62—the amount still owed—

---

[3] The Complaint also asserts claims for injunctive relief, specific performance, and breach of guaranty. *See* Doc. 1 at 10–11, 15 (Compl. ¶¶ 52–64, 87–93). But BMO's default judgment motion doesn't seek the relief outlined in these claims. *Compare* Doc. 25 at 3, *with* Doc. 1 at 10–11, 12, 15 (Compl. ¶¶ 57, 64, 93). And that omission makes plenty of sense. BMO's injunctive relief and specific performance claims rely on Blitz's continued possession and utilization of the collateral. *See* Doc. 1 at 10, 11 (Compl. ¶¶ 53, 63). But BMO filed a declaration with its default judgment motion clarifying that Blitz "voluntarily surrendered possession of the Collateral" after BMO filed its Complaint—making these claims moot. Doc. 25 at 11–12 (Broadie Decl. ¶ 38). The Complaint also brings a breach of guaranty

7

increased by any post-judgment interest that may accrue and decreased by any net proceeds from selling the remaining collateral. Doc. 25 at 3. It also seeks $32,034.50 in attorney fees and $817.10 in costs. *Id.*; *id.* at 113 (Miles Decl. ¶ 3) Under the replevin claim, BMO seeks a judgment against Blitz securing final possession of the collateral and authorization to continue to liquidate the remaining collateral. *Id.* at 3. The court starts with BMO's right to recover on its breach of contract claim.

### A.      Breach of Contract

As a preliminary matter, the court must determine which state's law applies to BMO's breach-of-contract claim. Then, the court assesses the sufficiency of the pleadings as a basis for a default judgment.

#### 1.      Choice of Law

In a diversity case such as this one, the court applies the substantive law of the forum state, including its conflict-of-laws rules. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement." *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 375 (Kan. 2002). Indeed, "[f]ederal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1273 (D. Kan. 1998).

---

claim. Doc. 1 at 15 (Compl. ¶¶ 87–93). But BMO asserted that claim just against the Guarantor, Scott Lawrence. *See id.* at 2, 15 (Compl. ¶¶ 3, 87–93). And BMO later voluntarily dismissed Mr. Lawrence as a defendant. Doc. 27. The relief requested in BMO's default judgment motion thus aligns with BMO's breach of contract and replevin claims. So, the court merely evaluates those claims. And it dismisses the rest of BMO's claims as moot.

BMO and Blitz signed nine agreements. All of them include a governing law clause designating the state laws of Illinois as controlling. *See* Doc. 25 at 17, 21, 26, 30, 35, 38, 45, 48, 54, 57, 63, 66, 72, 75, 81, 85, 91. So, enforcing the parties' contractual choice-of-law provision, the court applies Illinois law when evaluating the sufficiency of the pleadings to support a breach-of-contract default judgment.

2.   **Sufficient Basis in the Pleadings**

"Under Illinois law, a plaintiff must plead four elements in a breach of contract claim: '(1) a contract with definite and certain terms existed between the parties; (2) the plaintiff performed its obligations under the contract; (3) the defendant breached its obligations under the contract; and (4) the plaintiff suffered damages as a result.'" *Int'l Forest Prods., L.L.C. v. AAR Mfg., Inc.*, 618 F. Supp. 3d 1168, 1172 (D. Kan. 2022) (quoting *Hoopla Sports & Ent., Inc. v. Nike, Inc.*, 947 F. Supp. 347, 356 (N.D. Ill. 1996)).

Here, BMO alleges that it entered into nine Loan and Security agreements with Blitz where it agreed to finance Blitz's purchase of equipment and Blitz agreed to repay the financed amount plus interest. Doc. 1 at 2–6 (Compl. ¶¶ 9–27). And BMO attached the nine agreements to the Complaint. *See* Doc. 1-2 (Pl. Ex. A); Doc. 1-3 (Pl. Ex. B); Doc. 1-4 (Pl. Ex. C); Doc. 1-5 (Pl. Ex. D); Doc. 1-6 (Pl. Ex. E); Doc. 1-7 (Pl. Ex. F); Doc. 1-8 (Pl. Ex. G); Doc. 1-9 (Pl. Ex. H); Doc. 1-10 (Pl. Ex. I). Those allegations satisfy the first element of a breach-of-contract claim under Illinois law. On the second element, BMO alleges that it performed all its obligations under the nine agreements by financing Blitz's equipment purchases. Doc. 1 at 3–6 (Compl. ¶¶ 10, 12, 14, 16, 18, 20, 22, 24, 26). And a table identifies the vehicles Blitz purchased under each agreement. *Id.* at 6–7 (Compl. ¶ 29). On the third element, BMO alleges generally that Blitz failed to pay the amounts due under the agreements. *Id.* at 7 (Compl. ¶ 33). And BMO follows that general allegation with the specific dates when Blitz defaulted on each agreement.

9

*Id.* at 7–8 (Compl. ¶ 34).  BMO also alleges that the defaults continued, with no later payments made by Blitz.  *Id.*  Finally, on the fourth element, BMO alleges that it accelerated the balance due—thus declaring the entire indebtedness owed, *id.* at 8 (Compl. ¶ 37)—but Blitz has failed to satisfy the unpaid balance, *id.* at 14 (Compl. ¶¶ 81–82).  As a result of this unpaid balance, BMO alleges, it has suffered damages.  *Id.* (Compl. ¶ 83).  Taking these factual allegations as true, the court concludes that BMO has established sufficiently all four elements of a breach-of-contract claim under Illinois law.  Thus, BMO's "unchallenged facts constitute a legitimate cause of action" and BMO is entitled to a default judgment on this claim.  *Bixler*, 596 F.3d at 762.

### B.      Replevin

BMO also brings a replevin action under Federal Rule of Civil Procedure 64 and Kan. Stat. Ann. § 60-1005.  Doc. 1 at 12 (Compl. ¶ 66).  The content of Rule 64 requires the court to revisit its choice-of-law analysis.  The court must determine whether the contractual choice of Illinois law governs BMO's replevin claim, or whether the court should apply the law of the forum instead.

#### 1.      Choice of Law

Rule 64 provides that every remedy available under the law of the forum state for seizing property to satisfy a potential judgment is also available in federal court.  Fed. R. Civ. P. 64(a). And it specifically identifies replevin as one such remedy.  Fed. R. Civ. P. 64(b).  Our Circuit has interpreted Rule 64 to direct the court to apply exclusively state law—unless there's a supervening federal statute.  *See Fed. Deposit Ins. Corp. v. Antonio*, 843 F.2d 1311, 1314 (10th Cir. 1988) ("[The party's] resort to federal law is irrelevant, however, since Fed. R. Civ. P. 64 requires us to look exclusively to state law in shaping this particular remedy[.]"); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70*, 415 U.S. 423, 436 n.10 (1974) (explaining that Rule 64 codifies "long-settled federal law providing that in all cases in

federal court, . . . state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered"). And the language of Rule 64(a) appears to require that courts apply—specifically—the law of the forum.  *See* Fed. R. Civ. P. 64(a) ("At the commencement of and throughout an action, every remedy is available that, *under the law of the state where the court is located*, provides for seizing a person or property to secure satisfaction of the potential judgment." (emphasis added)). Indeed, courts in our Circuit routinely apply the law of the forum state under Rule 64.  *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 18-mc-00817, 2024 WL 329617, at *2 (D. Utah Jan. 5, 2024) (applying Utah law to Rule 64 remedy where court located in Utah), *report and recommendation adopted*, 2024 WL 328131 (D. Utah Jan. 29, 2024); *AVT-New York, L.P. v. Olivet Univ.*, No. 18-cv-00782, 2022 WL 17083688, at *2 (D. Utah Nov. 18, 2022) (same); *Centrinex, LLC v. Darkstar Grp., Ltd*, No. 12-2300-SAC, 2012 WL 5361507, at *1 (D. Kan. Oct. 31, 2012) (applying Kansas law in deciding motion for prejudgment attachment under Rule 64 because remedy available in federal court aligns with remedy available under forum state law). So, it seems that Kansas law applies to BMO's replevin claim.  But what about the parties' contractual provision designating Illinois law as the governing law?

Other district courts to address this forum-state-versus-contractual-state-law issue have concluded that "under Rule 64, [the court] appl[ies] the prejudgment remedies of 'the state where the court is located,' not the state of the contract's choice-of-law provision." *Romans v. Orange Pelican, LLC*, No. 22-cv-4169, 2022 WL 16856420, at *7 (N.D. Ill. Nov. 10, 2022) (quoting Fed. R. Civ. P. 64); *see also Farm Credit Leasing Servs. Corp. v. Mullin*, No. CV 18-71-BLG-DWM, 2018 WL 4259874, at *2 (D. Mont. July 2, 2018) (reciting that "a choice of law clause in a contract will not pre-empt Rule 64." (quotation cleaned up)); *UPS Cap. Corp. v.*

11

*Carpartsdepot, Inc.*, No. CV 14-7767 SS, 2014 WL 12768450, at *3 (C.D. Cal. Dec. 19, 2014) (collecting cases) (same); *Edgen Murray Corp. v. Vortex Marine Constr., Inc.*, No. 18-cv-01444-EDL, 2018 WL 6786264, at *2 (N.D. Cal. Dec. 18, 2018) ("A choice-of-law provision in a contract, such as the provision choosing Texas law in the settlement agreement at issue here, does not displace Rule 64."); *Admiral Charters, Inc. v. Son Yacht Charters, Inc.*, No. CIV. 99-54-P-H, 1999 WL 33117125, at *5, 11 (D. Me. June 8, 1999) (concluding that contractual choice-of-law clauses identifying Florida law as controlling don't apply to attachment sought under Rule 64 because "an attachment sought in federal court in Maine is governed by federal and Maine law; Florida law is inapposite"). The court follows suit and applies Kansas law under Rule 64 to evaluate the sufficiency of BMO's replevin action pleadings.

### 2. Sufficient Basis in the Pleadings

For a replevin action, Kansas law requires a plaintiff to file an affidavit or verified petition demonstrating the following elements:

> [t]hat the plaintiff is the owner of the property claimed, sufficiently describing it, or is lawfully entitled to the possession thereof, (2) that it is wrongfully detained by the defendant, or if it is held by an officer under legal process, that demand for the same has been made and refused, and (3) the estimated value thereof.

Kan. Stat. Ann. § 60-1005(a).

Here, the Complaint alleges that Blitz entered into nine Loan and Security agreements to purchase equipment—the collateral—with BMO financing the purchases. Doc. 1 at 2–6 (Compl. ¶¶ 9–28). And it alleges that Blitz granted BMO a first-priority security interest in the collateral. *See id.* at 6 (Compl. ¶ 29); *see also, e.g.*, Doc. 1-2 at 3 (Pl. Ex. A) (contractual clause 2.1 granting lender first-priority security interest in the equipment to secure, among other things, "payment of the Total Amount and all other obligations of Debtor to Lender" under the agreement). BMO also properly perfected its security interest in the collateral, recording its

interest with the State of Kansas. The lien cards attached to the Complaint demonstrate this compliance. Doc. 1 at 7 (Compl. ¶ 30); Doc. 1-11 at 2–13 (Pl. Ex. J). Under the agreements, failing to make a payment when it's due qualifies as an event of default. Doc. 1 at 7 (Compl. ¶ 32); *see also, e.g.*, Doc. 1-2 at 4 (contractual clause 5.1 identifying as an event of default debtor's failure to pay when due any amount owed). And the Complaint alleges that Blitz failed to make payments due under all nine agreements starting on September 1, 2023, and continued to fail with subsequent payments due. Doc. 1 at 7–8 (Compl. ¶ 34). Such an event of default entitles BMO to possession of the collateral under Section 5.2 of the agreements and Article 9 of the Uniform Commercial Code. *See, e.g.*, *Wells Fargo Equip. Fin., Inc. v. Hard Rock Excavation, Inc.*, No. 09-CV-1030 TS, 2010 WL 1948215, at *1 (D. Utah May 11, 2010) (plaintiff deemed entitled to possession under Article 9 of UCC after defendant defaulted on loan). These allegations satisfy the first element of replevin. BMO "is lawfully entitled to the possession" of the collateral. Kan. Stat. Ann. § 60-1005(a).

    The Complaint's allegations likewise satisfy the second and third elements of replevin. To satisfy the second element—wrongfully detained property—the Complaint alleges that BMO notified Blitz of its default under the agreements and demanded that Blitz surrender possession of the collateral. Doc. 1 at 9 (Compl. ¶ 46). But, despite "express demand," Blitz "failed or refused to return possession of the [c]ollateral described in the [a]greements." *Id.* (Compl. ¶ 48). Finally, the third replevin element—the property's estimated value—features prominently in the Complaint. BMO sufficiently pled this element when it identified the principal amount due under the agreements, plus accrued fees and interest, at acceleration: $314,459.38. *Id.* (Compl. ¶ 44). The Complaint thus satisfies the elements of replevin and BMO is entitled to default judgment on its replevin claim.

But some of the replevin relief BMO requested in the Complaint is now moot. Specifically, the Complaint requests an order granting delivery and immediate possession of the collateral and damages for its retention, or, if not delivered, judgment for the value of the collateral. *Id.* at 13 (Compl. ¶ 76). Based on the declaration BMO filed with its default judgment motion, these forms of relief are no longer at issue. BMO's declaration attests to Blitz's voluntary surrender of the collateral. Doc. 25 at 11–12 (Broadie Decl. ¶ 38). So, any relief premised on Blitz's continued possession of the collateral is moot.

The Complaint and BMO's default judgment motion request two other forms of replevin relief, however: a judgment against Blitz for (i) "final possession of the [c]ollateral" and (ii) "authorization to continue to liquidate the remaining [c]ollateral recovered in a commercial[ly] reasonable manner[.]" *Id.* at 3; *see also* Doc. 1 at 13 (Compl. ¶¶ 76.d–e). Other courts have granted such relief under replevin actions. *See e.g.*, *GE Com. Distrib. Fin. Corp. v. E.D.'s Small Engine Repair, Inc.*, No. WDQ-13-1789, 2014 WL 587440, at *3 (D. Md. Feb. 14, 2014) (granting default judgment and awarding "final and continuing possession of the collateral repossessed from defendant" under replevin claim); *Smith v. Prosser*, No. 12-2695 DWF/JSM, 2013 WL 6407734, at *1 (D. Minn. Dec. 9, 2013) (authorizing holding company "to immediately dispose of the property" on motion for replevin after borrowers defaulted on car loan); *Cedar Rapids Bank & Tr. Co. v. Mako One Corp.*, No. C17-4035-LTS, 2018 WL 6521490, at *10 (N.D. Iowa Jan. 11, 2018) (authorizing bank "to sell or otherwise dispose of some or all of the Collateral" on motion for default judgment or, in the alternative, summary judgment), *aff'd in part, rev'd in part on other grounds*, 919 F.3d 529 (8th Cir. 2019). So, the court grants BMO just these two forms of replevin relief. And next, it turns to the question of damages.

14

## V.     Damages

At default judgment, a court may award damages "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *DeMarsh*, 2009 WL 3720180, at *2 (quotation cleaned up). The "court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for default judgment." *Mathiason*, 187 F. Supp. 3d at 1277 (quotation cleaned up). What's more, an award of post-judgment interest "achieves the statutory goal of compensating the plaintiff while removing defendant's incentive to delay payment of the judgment." *Id.* at 1281 (quotation cleaned up) (awarding post-judgment interest on default judgment under 28 U.S.C. § 1961(a)).

BMO seeks default judgment against Blitz in an amount of $213,550.62, plus post-judgment interest which may accrue, less any net proceeds received from the liquidation of the remaining collateral. Doc. 25 at 3. BMO supports its requested damage award with a detailed declaration by BMO's litigation specialist, *id.* at 5–12, a notice of default and acceleration letter to Blitz, *id.* at 108, and the nine Loan and Security agreements, Doc. 1-2 (Pl. Ex. A); Doc. 1-3 (Pl. Ex. B); Doc. 1-4 (Pl. Ex. C); Doc. 1-5 (Pl. Ex. D); Doc. 1-6 (Pl. Ex. E); Doc. 1-7 (Pl. Ex. F); Doc. 1-8 (Pl. Ex. G); Doc. 1-9 (Pl. Ex. H); Doc. 1-10 (Pl. Ex. I). The court finds that BMO's declaration and documentary evidence reflect the basis for the requested award. The court also finds that an award of post-judgment interest is warranted. Thus, the court grants plaintiff's request for a default judgment in the amount of $213,550.62, plus post-judgment interest, less any net proceeds received from the liquidation of the remaining collateral.

## VI.     Attorney Fees and Costs

BMO also seeks an award of $32,851.60 in attorney fees and expenses. Doc. 25 at 3. A party's right to recover attorney fees in a diversity suit, like this one, is substantive in nature and governed by state law. *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351,

1352 (10th Cir. 1997). "In Illinois, attorney fees are ordinarily not recoverable 'absent a statute or a contractual agreement' stating otherwise." *James McHugh Constr. Co. v. Int'l Fid. Ins. Co.*, No. 14-cv-02399, 2018 WL 264195, at *2 (N.D. Ill. Jan. 2, 2018) (quoting *Kerns v. Engelke*, 390 N.E.2d 859, 865 (Ill. 1979)). "Illinois courts apply this standard exactingly, so that attorney fees must be 'specifically authorized' by a contract." *Id.* (quoting *State of Ill. Cap. Dev. Bd. v. G.A. Rafel & Co.*, 493 N.E.2d 348, 354 (Ill. App. Ct. 1986)). "Under Illinois law, a contract provision which specifically authorizes the recovery of attorney's fees is enforceable." *Fannie Mae v. Runte*, No. 13-2479-KHV, 2014 WL 4185404, at *3 (D. Kan. Aug. 22, 2014) (citing *Myers v. Popp Enters., Inc.*, 576 N.E.2d 452, 457 (Ill. App. Ct. 1991)).

Here, the nine Loan and Security agreements obligate Blitz to pay attorney fees as a remedy for default. Under the remedies-for-default section, § 5.2, the contracts provide that the debtor "shall also pay to Lender all expense of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender." *See, e.g.*, Doc. 1-2 at 4 (Pl. Ex. A). This provision specifically authorizes attorney fees. What's more, it authorizes them in the specific situation at issue here—when the lender incurs attorney fees in the event of default. *See Chapman v. Engel*, 865 N.E.2d 330, 334 (Ill. App. Ct. 2007) (declining to apply fee-shifting provision where contract provided for attorney fees in instance of default and district court explicitly found neither party had defaulted on contract).

Where contracting parties have agreed to shift attorney fees, the fee award simply provides the parties with the benefit of their bargain. *U.S. ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987). And so, courts should enforce—and routinely do enforce—the parties' bargain by awarding fees according to the contract's terms.

*Id.* at 1547–48. Under Illinois law, when "attorneys' fees are specifically authorized by the contract . . . it is an 'error for the trial court to fail to provide for them.'" *Bank of Am., N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F. Supp. 3d 1092, 1100 (N.D. Ill. 2014) (quoting *Myers*, 576 N.E.2d at 457). The court thus awards BMO attorney fees here. That principle leaves the question of whether the fees are reasonable.

"Close scrutiny of awards under federal fee-shifting statutes is justified because . . .the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." *W. States*, 834 F.2d at 1548 (quotation cleaned up). "To achieve this purpose, the district court must carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party[.]" *Id.* (quotation cleaned up). "In contrast, where contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain." *Id.* While courts don't apply the same "close scrutiny" to contract-based fee awards as it employs for statutory fee awards, a trial court, in its discretion, may deny or reduce the fees sought by contract if such an award is inequitable or unreasonable. *Id.* at 1549 (citing with approval cases where courts denied contractual fee awards because receiving party partly at fault or receiving party breached implied covenant of good faith and fair dealing).

Here, nothing suggests the fees sought by contract are inequitable or unreasonable. Nothing indicates BMO was partly at fault, or that BMO acted in bad faith. And BMO supports its requested fee award with a declaration outlining the hours worked by each attorney and paralegal, along with each one's hourly rate and a concise summary of the work performed. Doc. 25 at 113–14 (Miles Decl. ¶ 4). The declaration indicates that the hours devoted to this

case total 83.9, some of which resulted from involvement with defendants' various bankruptcy proceedings during the case's pendency. *Id.* at 114 (Miles Decl. ¶ 5). And the hourly rates come in at $445 for partners, $295 for an associate, and $195 for a paralegal, which are commensurate with recent area averages. *See, e.g.*, *Hippely v. United States*, 173 Fed. Cl. 389, 438 (2024) (reimbursing Kansas City lawyers at rates varying from $695/hour to $400/hour and Kansas City area paralegals at $200/hour and $190/hour); *Marmon v. RPS Auto, LLC*, No. 22-2381-KHV, 2024 WL 1961432, at *5 (D. Kan. May 3, 2024) (finding $475/hour reasonable rate in Kansas City legal community); *Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, LLC*, No. 22-cv-2331-HLT-TJJ, 2024 WL 757154, at *5 (D. Kan. Feb. 23, 2024) (collecting cases and noting that "[o]ther judges in this District have in recent years approved hourly rates up to $505 for the Kansas City market."). The court thus finds the requested rates reasonable. "Normally, where the court is merely enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms." *W. States*, 834 F.2d at 1548. Enforcing the contract according to its terms here, the court awards BMO its requested fees and costs.

## VII.     Conclusion

The court concludes that the pleadings furnish a sufficient basis for a default judgment in favor of plaintiff BMO Bank N.A. on its breach-of-contract and replevin claims. And, under the terms of the parties' contract, the court awards BMO its requested attorney fees and costs.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff BMO Bank N.A.'s Motion for Default Judgment (Doc. 25) is granted. The court directs the Clerk of the Court to enter Default Judgment against defendant Blitz Transit, LLC in the amount of $213,550.62, plus post-judgment interest which may accrue, less any net proceeds received from the liquidation of the remaining collateral.

**IT IS FURTHER ORDERED THAT** plaintiff BMO Bank N.A. is awarded final possession of the collateral as defined in the motion, and it is authorized to liquidate the remaining collateral in accordance with the agreement and applicable law.

**IT IS FURTHER ORDERED THAT** defendant Blitz Transit, LLC shall pay plaintiff BMO Bank N.A. its attorney fees and expenses in an amount of $32,851.60.

**IT IS SO ORDERED.**

**Dated this 23rd day of October, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
